UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGEL LUIS THOMAS, | : |
| | : |
| Plaintiff | : |
| | : |
| v. | : CIVIL NO. 3:CV-13-2661 |
| | : |
| STATE OF PENNSYLVANIA | : (Judge Kosik) |
| DEPARTMENT OF CORRECTIONS, | : |
| et al., | : |
| | : |
| Defendants | : |

**MEMORANDUM**

Angel Luis Thomas, an inmate confined at the State Correctional Institution at Huntingdon (SCI-Huntingdon), Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983. Named as defendants are the Pennsylvania Department of Corrections and SCI-Huntingdon. Presently pending is Defendants' motion to dismiss or, in the alternative for summary judgment[1] (Doc. 29.) Also pending are

---

[1] The motion will be addressed as one for summary judgment. In challenging the complaint, Defendant raises the arguments of statute of limitations, failure to exhaust under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321-71, and the Eleventh Amendment. In support of the exhaustion argument, Defendants submit the declaration of the Assistant to the Superintendent at SCI-Huntingdon, as well as a copy of the DC-ADM 804 Policy Statement on the Inmate Grievance System (Doc. 35-1, Ex. 1, Green Decl.). The Third Circuit Court of Appeals has held that the reliance by defendants on declarations from prison officials or Corrections Department administrators requires conversion of a motion to dismiss into a motion for summary judgment. See Berry v. v. Klem, 283 F. App'x 1, 3 (3d

Objections filed by Plaintiff to this court's order dated November 6, 2014.  In the challenged order, Plaintiff's filing entitled "Request for Declaratory Judgment" was construed by the court as a supplement to his brief in opposition to Defendants' pending motion to dismiss or for summary judgment.[2]  (Doc. 48.)

## I. Background

In his complaint, Plaintiff sets forth violations of his Fourteenth Amendment equal protection and due process rights, as well as his Fifth Amendment double jeopardy right.  He alleges that the DOC treats him differently by coercing him to participate in programs, while other inmates who are also confined without parole do not have to do so.  (Doc. 1, Compl. ¶¶ 2, 21.)

He filed the complaint on October 29, 2013, and sets forth the following allegations.  On January 11, 2005, he received a misconduct report and was sanctioned with 15 days cell restriction and the loss of two custody levels.  His cellmate received the same misconduct, but received 30 days cell restriction and lost only one custody level.  (Id. ¶ 1.)

---

Cir. 2008); Camp v. Brennan, 219 F.3d 279, 280 (3d Cir. 2000); see also Arroyo v. Li, Civil No. 3:CV-13-1506, 2014 WL 4215524, *4 (M.D. Pa. Aug. 25, 2014). Because Defendants labeled their motion as one to dismiss or for summary judgment, Plaintiff was placed on notice that the motion could be considered as a motion for summary judgment.

[2] Effective October 16, 2014, this case was no longer assigned to a Magistrate Judge and was exclusively before the undersigned for handling of all proceedings. Plaintiff's challenge to the order of November 6, 2014 will therefore be construed as a motion for reconsideration.

On June 15, 2009, almost 4½ years later, he alleges that he was moved from the honor block and his single cell, on the basis that he failed to complete his prescriptive programs. He claims that Mr. Cameron, his counselor, precipitated the move by submitting false reports. (Id. ¶ 2.) Plaintiff filed a complaint with the DOC's Office of Special Investigation, but was told that his allegations did not warrant a formal investigation. (Id. ¶ 21.)

On March 4, 2010, Plaintiff, and approximately 1100 other inmates, were temporarily transferred to the Muskegon Correctional Facility in Michigan. While confined in Michigan, Plaintiff was attacked by another Pennsylvania inmate, and both received the same misconduct reports and sanctions. However, after both inmates were returned to SCI-Huntingdon in May of 2011, Plaintiff claims that his custody level was reduced and he was removed from the honor block on May 25, 2011. (Id. ¶¶ 3, 5-6.) He claims that the Unit Manager had the opportunity to intercede on his behalf, but failed to do so. Plaintiff believes this conduct was for the purpose of discriminating against him and depriving him of a single cell. (Id. ¶ 7.)

He also claims that following his return to SCI-Huntingdon, he did not receive some of his property back that he had previously been permitted to possess during his prior incarceration there. He argues that other inmates were given their property at the discretion of the attending officer. (Id. ¶ 10.) On July 4, 2011, Plaintiff inquired as to the cost of copying his prison record and thought the cost to do so was

3

excessive. (Id. ¶ 20.)

Sometime between August 16, 2011 and September 7, 2011, Plaintiff wrote to SCI-Huntingdon staff members, apparently requesting various documents. He was told to submit a Right-to-Know request. On October 12, 2011 and April 18, 2012, he submitted such requests, and each was rejected for various reasons. A complaint was pursued with the Office of Special Investigation, but again did not meet the criteria for an investigation.

On July 21, 2013, Plaintiff learned that Mr. Cameron was again assigned as his counselor. (Id. ¶ 19.) Plaintiff states that he wrote to different individuals in at attempt to have this assignment changed.

Based on the foregoing, Plaintiff contends that the DOC has engaged in discriminatory acts against him, and denied him equal protection and due process in applying their policies. He claims that by doing so, said conduct has affected his ability to advance through the prison system and penalized him.[3]

**II.    Discussion**

    **A.    Motion for Reconsideration of 11/6/14 Order**

---

[3] On June 11, 2014, Plaintiff submitted a document entitled "Attachment to the Procedural History." (Doc. 23.) In this filing, he appears to set forth new, separate incidents that have occurred at SCI-Huntingdon beginning in June of 2014. Because of the court's resolution of Defendants' pending motion to dismiss or for summary judgment, and because these matters must be pursued by way of a separate civil rights action, Plaintiff's filing will not be accepted as a supplement to the original complaint and the allegations therein will not be addressed in this action.

4

*Standard of Review*

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." Kabacinski v. Bostrom Seating, Inc., 98 F. App'x 78, 81 (3d Cir. 2004)(quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)).  Because "federal courts have a strong interest in the finality of judgments," United States v. Hoey, No. 09-200, 2011 WL 748152, at *2 (W.D. Pa. Feb. 15, 2011)(citation omitted),the standard that must be met to prevail on a motion for reconsideration is high, see Berry v. Jacobs IMC, LLC, 99 F. App'x 405, 410 (3d Cir. 2004).  The court may grant a motion for reconsideration if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. United States v. Banks, Crim. No. 03-245, 2008 WL 5429620, at *1 (W.D. Pa. Dec. 31, 2008)(citing Max's Seafood Café by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)).

*Analysis*

In the instant case, Plaintiff challenges the court's decision of November 6, 2014, construing a document he filed entitled "Request for Declaratory Judgment" as a supplement to his brief in opposition to Defendants' motion to dismiss, or in the alternative for summary judgment.  The court based its ruling on the fact that

5

Plaintiff's filing contained arguments in opposition to those raised by Defendants in their motion, and set forth citations to legal principles in support of his arguments. While it is true that Plaintiff poses numerous "declaratory questions" that he would like the court to answer, he is basically seeking a ruling by the court in his favor with respect to Defendants' motion. In light of such, and the following disposition of the complaint, the motion for reconsideration will be denied.

**B.     Motion for Summary Judgment**

*Standard of Review*

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See Fed. R. Civ. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only if this threshold is met may the cause of action proceed. Pappas, 331 F.Supp.2d at 315.

*Analysis*

1.     Statute of limitations

There is no specific statute of limitations for actions filed pursuant to 42 U.S.C. § 1983. However, the Supreme Court has held that the statute of limitations for a § 1983 claim is the state statute of limitations for personal injury actions. Cito v. Bridgewater Twp. Police Dept., 892 F.2d 23, 25 (3d Cir. 1989), citing Wilson v. Garcia, 471 U.S. 261 (1985). Since Pennsylvania has a two year statute of limitations for personal injury actions, the statute of limitations applicable to claims brought under § 1983 in Pennsylvania is two years. See 42 Pa.C.S.A. § 5524; Fitzgerald v. Larson, 769 F.2d 160, 162 (3d Cir. 1985).

Plaintiff filed this action on October 29, 2013. As such, any cause of action that accrued on or prior to October 28, 2011, is barred by the applicable statute of limitations. Applying this statutory bar, all claims set forth in the complaint other than the rejection of Plaintiff's Right-to-Know request and any challenges by Plaintiff to the assignment of Mr. Cameron as his counselor in 2013 are barred.

In opposing Defendants' motion, Plaintiff first tries to argue that the motion is untimely, and therefore should not be considered by the court. Without unnecessary elaboration, the court has previously addressed the issue of the timeliness of Defendants' motion, and has found it to be timely. (Doc. 45.)

With respect to the statute of limitations bar, Plaintiff merely states that all of the incidents " . . . were not isolated and were the beginning of a continuous repetitive milestone", and wants to know at what point a statute of limitations applies to a

7

continuous and repetitive event. (Doc. 40, Pl.'s Opp. Br. at 3.) Clearly, Plaintiff fails to comes forth with any basis, much less a shred of evidence, in support of any argument that all of the alleged events going back as far as 2005 establish a continuing violation sufficient to excuse the statute of limitations bar.

    2.    <u>Exhaustion of Administrative Remedies</u>

Defendants maintain that Plaintiff has procedurally defaulted on the claims remaining that are not barred by the statute of limitations by failing to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a). This section provides as follows:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Pursuant to 42 U.S.C. § 1997e(a), the exhaustion of available administrative remedies is mandatory. <u>Booth v. Churner</u>, 532 U.S. 731, 739 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. <u>Nyhuis v. Reno</u>, 204 F.3d 65, 75 (3d Cir. 2000). "[I]t is beyond the power of [any]

8

court ... to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Id. at 73, citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis, 204 F.3d at 71. Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to 42 U.S.C. § 1983 or any other federal law. Jones v. Bock, 127 S. Ct. 910, 918-19 (2007). Nevertheless, "failure to exhaust is an affirmative defense that must be pled and proven by the defendant." Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (citing Ray v. Kertes, 285 F.2d 287, 295 (3d Cir. 2002)).

The PLRA mandates that a prisoner "properly" exhaust his or her administrative remedies before commencing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2387 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek [ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 2387 (quoting Porter, 534 U.S. at 525.) Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372

9

F.3d 218, 227-32 (3d Cir. 2004)("[P]rison grievance procedures supply the yardstick for measuring procedural default."). Procedural default is a question of law. Id. at 232.

Defendants maintain that Plaintiff has failed to exhaust the two timely claims remaining: (1) rejection of Plaintiff's April 18, 2012 Right-to-Know request and (2) challenge to assignment of Mr. Cameron as his counselor in 2013. In support of their argument, Defendants submit the declaration of Constance Green, Assistant to the Superintendent at SCI-Huntingdon, who maintains the responsibility of tracking, reviewing and addressing all grievances submitted at the prison. Green states that the DOC has established an Inmate Grievance System, the procedures of which are set forth in DC-ADM 804 Policy Statement and Procedures Manual ("DC-ADM 804"). (Doc. 35-1, Green Decl. ¶ 4.) Attached to Green's declaration is a copy of the version of DC-ADM 804 in effect at the relevant time.

The Pennsylvania Department of Corrections has a three-tiered inmate grievance procedure as set forth in DC-ADM 804. (Doc. 49, Ex. B.) Under the DOC's inmate grievance procedure, an inmate must submit an initial grievance to the prison's Grievance Coordinator within fifteen (15) days of the incident in question. In the grievance, he must include the facts relevant to his claim and identify the individuals directly involved in the events. He must specifically state any claims he wishes to make concerning the violation of DOC directives, regulations, etc. See DC-

10

ADM 804(1)(A)(12).

Following a decision on the grievance at the initial level of review, the inmate has fifteen (15) working days to appeal to the Facility Manager. Thereafter, he can pursue a final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). A grievance which is rejected or an appeal which is dismissed is different from a grievance or appeal which is denied. A rejected grievance or dismissed appeal does not lead to a finding on the merits of the issue by the DOC officer to whom it is addressed.

All inmates at SCI-Huntingdon are provided with notice of the Grievance Policy, and the requirements they must satisfy in pursuing grievances. (Doc. 35-1 ¶ 10.) Green has reviewed the grievance records at SCI-Huntingdon for the relevant time period. After doing so, there is no record that Plaintiff ever submitted or attempted to submit any grievances regarding either of the issues remaining in this action. (Id. ¶ 11.)

In opposing Defendants' motion, Plaintiff basically attempts to circumvent the issue all together by arguing that the merit of his claims is far more important than examining any exhaustion requirement. (Doc. 40 at 3.) He believes that the arguments raised by Defendants "overshadow" the actual claims of the complaint. (Id. at 5.) He asserts generally that "the repeat occurrence of the grievance system being circumvented by an array of tactics that negate the possibility of its procuring a

11

remedy" can be shown. (Id. at 4.) However, he does not establish or even argue that he was somehow prevented by Defendants from pursuing grievances. Rather, he argues to the court that the PLRA requirements would not have "corrected the situation." (Id.)

Plaintiff's beliefs about the importance of his claims and any perceived ineffectiveness of the grievance system do not excuse him from the PLRA's mandatory exhaustion requirement. As such, his remaining two claims are dismissed for failure to exhaust administrative remedies.

3. Eleventh Amendment

The only named Defendants in this action are the Pennsylvania Department of Corrections and SCI-Huntingdon. Defendants' argument for dismissal of the complaint on the basis that "States are not 'persons' within the meaning of § 1983" and state agencies are not "persons" under § 1983, see Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989), are well-taken. The Pennsylvania DOC and SCI-Huntingdon are not "persons" for purposes of § 1983.

If there were viable claims in the complaint, the court would be required to allow amendment to name specific individuals associated with Plaintiff's claims.[4]

---

[4] On December 15, 2014, Plaintiff submitted a document entitled "Additional Constitutional Violations Access to the Court's Diminished and Denied." (Doc. 49.) In this document, he sets forth new claims with respect to the DOC's attempts to hinder his access to the courts. He claims that he sent to the court for filing a "Request for Temporary Waiver of Filing Fees" on August 13, 2014, but he does not

12

However, for the reasons set forth above, any such amendment would be futile.

For all of the above reasons, Defendants' motion to dismiss or, in the alternative, for summary judgment, will be granted. An appropriate order follows.

---

see this entry on the docket. He believes the DOC is engaging in retaliation, and states that he has filed a lawsuit in the Huntingdon County Court of Common Pleas with respect to his claims. While he does not expect relief from said court, he hopes they may intervene. Regardless, the underlying basis of Plaintiff's recent filing is with respect to incidents occurring in June and July of 2014. Any new retaliation claim Plaintiff wishes to pursue must be by way of a new civil rights action.

13